FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 22, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAWN C.,[1] | No. 1:19-cv-03230-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2  motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

### JURISDICTION

4  The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

6  A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation.  *Id.*

17  In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1  the claimant's "residual functional capacity." Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5       At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

8  capable of performing past relevant work, the Commissioner must find that the

9  claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

10  performing such work, the analysis proceeds to step five.

11       At step five, the Commissioner considers whether, in view of the claimant's

12  RFC, the claimant is capable of performing other work in the national economy.

13  20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

14  must also consider vocational factors such as the claimant's age, education, and

15  past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

16  adjusting to other work, the Commissioner must find that the claimant is not

17  disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

18  other work, analysis concludes with a finding that the claimant is disabled and is

19  therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

20

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 19, 2017, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of January 11, 2017. Tr. 66, 167-73. The application was denied initially and on reconsideration. Tr. 80-86; Tr. 88-94. Plaintiff appeared before an administrative law judge (ALJ) on August 31, 2018. Tr. 27-56. On November 20, 2018, the ALJ denied Plaintiff's claim. Tr. 12-26.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2019, has not engaged in substantial gainful activity since January 11, 2017. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairment: degenerative disc disease. Tr. 17.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

ORDER - 6

impairment.  Tr. 17.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> [Plaintiff] is limited to standing/walking up to four hours with a
> sit/stand option and sitting up to six hours total. He can never climb
> ladders, ropes, or scaffolds. He can never crawl. [Plaintiff] can
> occasionally stoop, kneel, and bend. Finally, [Plaintiff] must avoid
> vibrations as well as hazardous machinery and equipment.

Tr. 18.

    At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 20.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as, garment folder, router, or information clerk.  Tr. 21.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from the alleged onset date of January 11, 2017, through the

date of the decision.  Tr. 22.

    On August 2, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly evaluated lay witness evidence; and

4.  Whether the ALJ conducted a proper step-two analysis.

ECF No. 14 at 2.

**DISCUSSION**

**A.    Subjective Symptom Testimony**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 6-13; ECF No. 16 at 2-5. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the

ORDER - 8

symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 18.

### 1. Failure to Comply with Treatment Recommendations

The ALJ found that Plaintiff's "failure to follow through with prescribed

treatment" suggests that he is not as limited as alleged.  Tr. 19.  Unexplained, or

inadequately explained, failure to seek treatment or follow a prescribed course of

treatment may serve as a basis to discount the claimant's reported symptoms,

unless there is a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th

Cir. 2007).  In support of her finding, the ALJ notes that, while Plaintiff was

repeatedly referred to physical therapy, there is no evidence that he engaged in

ORDER - 10

physical therapy.  Tr. 19 (citing Tr. 316, 320, 338-39 (various referrals to physical therapy)).  Plaintiff contends that the ALJ erred by presuming that he had no good reason for failing to attend the recommended therapy, when he and his partner testified, and the record supports, that he could not afford physical therapy.  ECF No. 14 at 6-9; ECF No. 16 at 3-5.  Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Moreover, Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p, 2016 WL 1119029, at *8 (March 16, 2016).

Here, Plaintiff testified that he was unable to attend physical therapy because of the cost; he testified that his past medical insurance did not cover physical therapy, making it too expensive to attend, and that his new medical insurance covered physical therapy, but required a high co-pay, rendering it unaffordable. Tr. 42.  Plaintiff's boyfriend similarly testified that the co-pay required was cost-prohibitive.  Tr. 49 (noting that the co-pay was typically between $90-$150 per session).  Throughout the record, there are similar indications that Plaintiff reported he was unable to afford physical therapy, *see* Tr. 254 ("has tried physical

therapy, but could only afford one visit – has been doing exercises at home"); Tr. 255 ("insurance doesn't cover physical therapy"); Tr. 257 ("ordered referral to PT, but [patient] was unable to attend due to co-pay – but he did get the exercises and he mentioned it did help temporarily"); Tr. 259 ("[h]e tried to attend PT, but was only able to attend one session as his co-pays were very high"); Tr. 320 ("patient was referred [to PT and massage therapy] but at the time his insurance would not cover it so he had only 1 session"); Tr. 323-24 ("insurance prohibitive to restorative treatments IE: massage, chiropractic, + physical therapy"), and that, consequently, he continued to engage solely in pain management.  *See* Tr. 564-609 (documenting chronic pain medications consistently dispersed to Plaintiff).  The ALJ appears to have rejected Plaintiff's proffered justification for not attending physical therapy, noting that "while [Plaintiff] testified that he was unable to afford physical therapy, he did engage in regular pain management and was able to go to the emergency department for acute treatment."  Tr. 20; *see also* Tr. 19 (noting Plaintiff sought treatment in the emergency department twelve times in twelve months).  However, the fact that Plaintiff engaged in pain management and sought acute treatment at the emergency department, treatments which he asserts were covered by his insurance and not cost-prohibitive, *see* ECF No. 16 at 4-5, does not

ORDER - 12

refute or contradict his testimony that he could not afford physical therapy.[2]  In

order to reject Plaintiff's symptom testimony based on his failure to attend physical

_____

[2] Defendant makes three unpersuasive arguments.  First, Defendant argues that
"Plaintiff's showing of a general disregard for his own health evinced a lack of
credibility in his disability claim."  ECF No. 15 at 10.  However, Defendant
provides no evidence to support Plaintiff "disregarded his health," and the ALJ did
not rely on this reason in her determination.  Second, Defendant argues that "one
could logically assume if Plaintiff were as disabled as alleged, he would have
exhausted every possible option in order to obtain the necessary treatment to regain
his ability to work (i.e. a payment plan)."  *Id*. at 11.  However, Defendant provides
no evidence that a payment plan, or charity/community resource, was available to
Plaintiff, nor is such evidence evident from the record.  Moreover, this does not
appear to be a basis relied upon by the ALJ in her reasoning, and even if it had
been, the ALJ failed to properly and fully develop the record on this ground.  *See
Stinnett v. Colvin*, No. CV-13-3115-FVS, 2014 WL 6879074, at *6 (E.D. Wash.
Dec. 4, 2014) ("An ALJ's duty to develop the record in this regard is significant
because financial concerns and lack of insurance are valid reasons why Plaintiff
may not seek treatment."); *Burch v. Colvin*, No. 2:14-CV-299-LRS, 2015 WL
4641626, at *4 (E.D. Wash. Aug. 4, 2015) ("It is not the Plaintiff's responsibility

ORDER - 13

therapy, which he consistently contends he could not afford and which the

evidence in the record supports, the ALJ must develop the record to determine

what options were available to and financially feasible for Plaintiff.  The ALJ did

not do so in this case.  Thus, to the extent Plaintiff's resources or financial

constraints prohibited him from accessing physical therapy, based on the evidence

in the record, this was not a clear and convincing reason to discredit his symptom

testimony.

     *2.  Inconsistent with Objective Medical Evidence*

     The ALJ found that Plaintiff's symptom complaints were not supported by

the medical evidence.  Tr. 18-19.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

_____

to provide sufficient documentation that she exhausted *all* sources of community

treatment.  The ALJ did little to investigate whether the Plaintiff sought other free

services available in the community.").  Third, as the ALJ suggested, Defendant

asserts that, based on Plaintiff's ability to go to the emergency department for

acute treatment and engage in regular pain management "he logically should have

been able to afford therapy."  *Id*.  This argument remains unfounded, particularly

where Plaintiff noted that pain management was covered by his insurance and

affordable.  ECF No. 16 at 4-5.

ORDER - 14

1  not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

2  857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

3  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence

4  is a relevant factor in determining the severity of a claimant's pain and its disabling

5  effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective

6  evidence is a factor which may be relied upon in discrediting a claimant's

7  testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d

8  676, 680 (9th Cir. 2005).

9  As discussed *supra*, the ALJ's sole other reason for discrediting Plaintiff's

10  symptom testimony is legally insufficient.  Because, the ALJ's rejection of

11  Plaintiff's symptom claims may not solely be based on the lack of supporting

12  objective medical evidence, the ALJ is instructed to reevaluate Plaintiff's symptom

13  testimony on remand.  *See Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47;

14  *Fair*, 885 F.2d at 601.

15  **B.    Medical Opinion Evidence**

16  Plaintiff challenges the ALJ's evaluation of the medical opinions of Vern

17  Commet, DNP, and the state agency consultants, Robert Bernandez-Fu, MD, and

18  JD Fitterer, MD.  ECF No. 14 at 14-20; ECF No. 16 at 5-7.

19  There are three types of physicians: "(1) those who treat the claimant

20  (treating physicians); (2) those who examine but do not treat the claimant

ORDER - 15

1    (examining physicians); and (3) those who neither examine nor treat the claimant

2    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

3    *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

4    Generally, a treating physician's opinion carries more weight than an examining

5    physician's opinion, and an examining physician's opinion carries more weight

6    than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations

7    give more weight to opinions that are explained than to those that are not, and to

8    the opinions of specialists concerning matters relating to their specialty over that of

9    nonspecialists."  *Id.* (citations omitted).

10          If a treating or examining physician's opinion is uncontradicted, the ALJ

11   may reject it only by offering "clear and convincing reasons that are supported by

12   substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

13   "However, the ALJ need not accept the opinion of any physician, including a

14   treating physician, if that opinion is brief, conclusory, and inadequately supported

15   by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

16   (9th Cir. 2011) (internal quotation marks and brackets omitted).  "If a treating or

17   examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

18   may only reject it by providing specific and legitimate reasons that are supported

19   by substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

20   31).  The opinion of a nonexamining physician may serve as substantial evidence if

ORDER - 16

it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013).[3] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

---

[3] This section was amended in 2017. *See* 20 C.F.R. § 404.1513 (amended rule). Because Plaintiff filed his claim before March 27, 2017, when the amended rule became effective, the prior version of the rule remains applicable. *Id.*

ORDER - 17

1      *1.  Vern Commet, DNP*

2          On June 30, 2017, Mr. Commet completed a medical source statement.  Tr.

3  323-24.  He diagnosed Plaintiff with "thoracic pain" located in his "upper back and

4  ribs on right side," and noted that Plaintiff's MRI revealed "mild changes of T5-6,

5  T6-7 disks without impingement."  Tr. 323.  He noted that Plaintiff occasionally

6  had to lie down during the day due to pain, but expressed that this was not every

7  day.  Tr. 323.  He noted that Plaintiff's treatment consisted of "ER & clinic

8  evaluations as insurance is prohibitive to restorative treatments, [i.e.,] massage,

9  chiropractic, and physical therapy."  Tr. 323.  He opined that Plaintiff's pain was

10  attributable to the mild changes on his MRI, as well as "poor physical

11  conditioning."  Tr. 323.  Mr. Commet opined that Plaintiff's prognosis was good if

12  he could complete physical therapy; that his condition would continue to

13  deteriorate with employment "if [he is] not able to complete therapy;" and that he

14  would likely miss two days of work per month due to episodic muscle spasms,

15  which last one to two days.  Tr. 324.  He noted that he had treated Plaintiff since

16  March 14, 2017, and that the opined limitations had persisted since then.  Tr. 324.

17  Finally, Mr. Commet concluded that Plaintiff does not need surgery; that

18

19

20

ORDER - 18

1    "[changes] on MRI are normal for age;" and that "[h]e needs therapy to help

2    recondition muscles," and needs to lose weight.  Tr. 324.

3         The ALJ gave little weight to Mr. Commet's opinion.  Tr. 20.  Because Mr.

4    Commet is considered a non-acceptable medical source, the ALJ was required to

5    provide germane reasons for discounting his opinion.[4]  *See Dodrill*, 12 F.3d at 918.

6    _____

7    [4] Plaintiff contends that Mr. Commet should be treated as an acceptable medical

8    source and entitled to the higher standard of review for acceptable medical sources

9    because his signature on the medical source statement includes "MD" after DNP,

10   which Plaintiff asserts means either that Mr. Commet is an MD, or that a doctor

11   reviewed or co-signed the medical source statement.  ECF No. 14 at 15; ECF No.

12   16 at 5-6.  Neither assertion is persuasive.  First, Mr. Commet routinely signs

13   charts as a DPN, not an MD, *see* Tr. 321-22, 338-39, and there is no indication that

14   Mr. Commet is an MD in the record.  Defendant cites to the following web page as

15   further support that Mr. Commet is a nurse practitioner, rather than a doctor:

16   https://www.healthcare4ppl.com/physician/washington/yakima/vern-d-commet-

17   1619998291.html ("Vern D Commet is a Nurse Practitioner Specialist in Yakima,

18   Washington").  ECF No. 15 at 16, n.2.  Second, there is no evidence indicating that

19   any doctor, including Dr. Atteberry as Plaintiff suggests, reviewed, authorized

20   signature, or co-signed the medical source statement.  Because this case is being

ORDER - 19

1  Here, the ALJ found that the opined limitations, particularly that Plaintiff would

2  miss work due to his condition and would need to lay down during the day due to

3  pain, were inconsistent with treatment records.  Tr. 20.  An ALJ may reject

4  opinions that are internally inconsistent.  *Nguyen*, 100 F.3d at 1464.  Moreover, an

5  ALJ need not credit medical opinions that are unsupported by the medical source's

6  own data and/or are contradicted by the opinions of other examining medical

7  sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ

8  found the opinion was inconsistent with contemporaneous treatment records

9  indicating that Plaintiff was "repeatedly referred to physical therapy and refused to

10  follow through with this treatment."  Tr. 20.  However, while the consistency of a

11  medical opinion with the record as a whole is a relevant factor in evaluating a

12  medical opinion, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*,

13  495 F.3d at 631, the fact that a claimant fails to pursue treatment is not directly

14  relevant to the weight of a medical provider's opinion.  *See* 20 C.F.R. §

15  404.1527(c).  Moreover, as discussed *supra*, Plaintiff presented evidence,

16  consistent with the record and with treatment records authored by Mr. Commet,

17  that he could not afford physical therapy.  *See, e.g.*, Tr. 323-24.  Thus, this was not

18  _____

19  remanded for the ALJ to reevaluate Plaintiff's symptom testimony, the ALJ is

20  instructed to clarify this matter on remand.

ORDER - 20

1  a germane reason to discredit the opinion.  The ALJ also found that the opined

2  limitations were inconsistent with Mr. Commet's own treatment record, written the

3  same day, in which he noted, "[w]e reviewed his MRI imaging data again, which

4  shows [sic] pretty much unremarkable with the exceptions of 2 mild disk bulges

5  that cause no significant central or foraminal stenosis," and indicated, "at this point

6  he has nothing that prevents him from being able to seek employment," and "I do

7  believe he would probably be employable if he completed therapy services and/or

8  Pain Medicine evaluation and treatments."  Tr. 339.  The ALJ also noted that, per

9  the treatment record, Mr. Commet "refused to provide [Plaintiff with] any

10  medication."  Tr. 20 (citing Tr. 339).

11      Plaintiff contends that the ALJ mischaracterized the statements in the June

12  30, 2017 treatment record.  ECF No. 14 at 18-19; ECF No. 16 at 6-7.  First, he

13  argues that Mr. Commet was not suggesting that pain medication was unnecessary,

14  which would be inconsistent with his opinion, but rather that Plaintiff should

15  consult with a pain medicine specialist to establish such treatment, as evidenced by

16  his referral to Dr. Kwon.  ECF No. 14 at 18; ECF No. 16 at 6.  The treatment

17  record states in relevant part,

18      [Plaintiff] *may benefit from Pain Medicine evaluation* and see if
        zygapophyseal joint injections and/or intercostal nerve blocks may
19      help him with his pain complaint. *I have referred him over to Dr.
        Daniel Kwon for a consultation at Water's Edge*. However, he will
20      need to complete physical therapy, at least 4-6 visits, and he

ORDER - 21

understands these instructions. I did not dispense any medication for [him].

Tr. 339 (emphasis added).  In light of his referral to a pain specialist and indication that Plaintiff could benefit from a Pain Medicine evaluation, the Court discerns no inconsistency between Mr. Commet's decision to decline dispensing pain medication and his medical opinion.  Thus, this was not a germane reason to discredit the opinion.

Next, Plaintiff notes that Mr. Commet acknowledged that the imaging showed mild disk bulges and contends that this finding supports Mr. Commet's opined limitations.  ECF No. 14. at 18; ECF No. 16 at 6.  Defendant argues that the ALJ properly discounted the opinion as unsupported by the record, including Mr. Commet's own records.  ECF No. 15 at 16-17.  While the objective medical evidence throughout the record is indicative of largely normal and/or minimal clinical findings and imaging, *see* Tr. 253 (normal examination of lumbosacral spine and bilateral hips; tenderness to rhomboids and paraspinal of thoracic and lumbar regions); Tr. 255 ("thoracic spine x-ray 12/21 showed mild compression wedge deformity at T7"); Tr. 263 ("no evidence of lumbar lordosis, thoracic kyphosis, or pelvic asymmetry/tilt, [tenderness] over rhomboid area on right, no midline tenderness, no evidence of paraspinal muscle spasm/tension, no erythema/warmth, able to palpate spinous processes with  no evidence of step-off"); Tr. 280 ("pain, mild tenderness noted on midline thoracic and left paraspinal

ORDER - 22

1    areas upon examination, ROM is normal"); Tr. 284 (Jan. 2017 thoracic spine

2    imaging – no significant bony or joint abnormality identified; vertebral body height

3    alignment and interspacing appear to be within normal limits; paraspinal soft

4    tissues are unremarkable); Tr. 285 (Jan. 2017 imaging of lumbar spine – normal in

5    alignment; good preservation of disc spaces; bodies, laminae, pedicles, and

6    sacroiliac joints show no abnormalities); Tr. 299 (July 2016 thoracic spine imaging

7    – unremarkable with no abnormalities); Tr. 311 ("back exam included findings of

8    normal inspection," ROM normal, flexion of torso, tenderness, no pain with

9    straight leg raise, no pain to thoracic or lumbar spine); Tr. 316 (symptoms

10   consistent with 2 thoracic disk bulges; "I would not recommend surgical

11   therapy…lesions, frankly, are not big enough to do that"); Tr. 318 (March 2017

12   lumbar spine imaging showed mild degenerative disc disease; no disc bulge or

13   herniation); Tr. 327 (ROM normal in back); Tr. 333 (normal back examination

14   with no tenderness), the record also contains evidence of muscle spasms, *see, e.g.*,

15   Tr. 257, 259, 269, 292, evidence that Plaintiff sought treatment due to flare-ups,

16   *see, e.g.*, Tr. 265, 320, and numerous notations documenting Plaintiff's subjective

17   pain complaints. *See* Tr. 300 (6/10 pain); Tr. 320 (7/10 pain); Tr. 252, 265 (8/10

18   pain); Tr. 254, 276, 288, 315-16 (10/10 pain).  Because the weight of Plaintiff's

19   subjective symptom complaints needs to be reevaluated, as discussed *supra*, the

20

ORDER - 23

1  opinion of Mr. Commet, which necessarily relies in part on the subjective pain

2  complaints made by Plaintiff, must also be reevaluated.

3      *2. State Agency Consultants*

4      On March 23, 2017, Dr. Robert Bernandez-Fu reviewed Plaintiff's records

5  and concluded that Plaintiff could perform light work with exertional limitations.

6  Tr. 60-63.  Similarly, on April 21, 2017, Dr. JD Fitterer, reviewed the medical

7  record and concluded that Plaintiff could perform light work with exertional

8  limitations.  Tr. 71-74.   The ALJ gave great weight to both opinions.  Tr. 20.

9      Plaintiff challenges the weight afforded to these opinions, arguing that the

10  ALJ "failed to provide sufficient basis for adopting these opinions over Dr.

11  Commet's treating source opinion."  ECF No. 14 at 19-20.  An ALJ may choose to

12  give more weight to an opinion that is more consistent with the evidence in the

13  record.  20 C.F.R. § 404.1527(c)(4); *Nguyen*, 100 F.3d at 1464.  Relevant factors

14  when evaluating a medical opinion include the amount of relevant evidence that

15  supports the opinion, the quality of the explanation provided in the opinion, and the

16  consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

17  F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, the ALJ found that Dr. Bernandez-Fu's

18  opinion and Dr. Fitterer's opinion were "consistent with the unremarkable imaging

19  as well as the minimal physical findings noted throughout the record."  Tr. 20

20  (citing Tr. 252-53, 257, 259, 261, 263, 269, 280, 311, 316, 320, 333, 569, 576, 579,

ORDER - 24

583, 586, 590, 593, 598, 602, 605).  As with Mr. Commet's opinion, these opinions should be reevaluated on remand in light of the ALJ's reweighing of Plaintiff's subjective symptom testimony.

## C. Other Challenges

Plaintiff raises several other challenges to the ALJ's evaluation of Plaintiff's symptom testimony, the medical opinion evidence, and the testimony of the lay witness, as well the ALJ's analysis at step two.  ECF No. 14 at 4-21; ECF No. 16 at 2-9.  The Court declines to address these challenges in full here.  However, the Court briefly addresses the following.  First, Plaintiff contends that the ALJ erred by failing to consider his obesity at step two, and specifically the "combined effects of obesity" with his degenerative disc disease.  ECF No. 14 at 4-6; ECF No. 16 at 7-9.  On remand, the ALJ should assess Plaintiff's obesity at step two and consider any combined effects Plaintiff's obesity may have with his degenerative disc disease where warranted.  Second, Plaintiff contends that the ALJ erred by rejecting the lay witness testimony of Plaintiff's boyfriend, Mr. Ayers.  ECF No. 14 at 20-21; ECF No. 16 at 7.  On remand, the ALJ should reevaluate the lay witness testimony of Mr. Ayers in light of the new analyses of Plaintiff's subjective symptom testimony, the medical opinion evidence, and a new analysis at step two.

ORDER - 25

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 2, 21; ECF No. 16 at 9-11.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

ORDER - 26

F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, further proceedings are clearly necessary.  As discussed *supra*, the ALJ's evaluation of Plaintiff's subjective symptom testimony was not supported by substantial evidence.  However, even if the ALJ were to fully credit Plaintiff's symptom testimony, the record as a whole creates serious doubt that the claimant is disabled within the meaning of the Social Security Act.  Moreover, the ALJ still needs to resolve the conflicting medical opinion evidence.  Therefore, this case is remanded for further proceedings.  The ALJ is instructed to conduct a new sequential analysis, including analyzing Plaintiff's obesity at step two, reevaluating Plaintiff's symptom claims, and reevaluating the medical opinion and lay opinion evidence in light of the new analyses.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

ORDER - 27

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 22, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28